UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

_____

In Re:

NICHOLE R. HERTER,

|

Bankruptcy Case
No. 08-41160-JDP

Debtor.

_____

R. SAM HOPKINS, Trustee,


Plaintiff,
vs.

IDAHO STATE UNIVERSITY
CREDIT UNION;  NICHOLE
RENAE HERTER; and
DAVID HERTER,


Defendants.

|

Adv. Proceeding
No. 10-8093-JDP

_____

MEMORANDUM OF DECISION

_____

MEMORANDUM OF DECISION - 1

Appearances:

> Daniel C. Green, RACINE, OLSON, NYE, BUDGE & BAILEY,
> CHARTERED, Pocatello, Idaho, Attorney for Plaintiff.

> Judy L. Geier, EVANS KEANE, LLP, Boise, Idaho, Attorney for
> Defendants Idaho State University Credit Union and David Herter.

## Introduction

Resolution of the issues in this action requires the Court to decide

whether an interest in an Idaho residence, which passed unadministered

through a husband's chapter 7 [1] bankruptcy case, may be administered as

property of the bankruptcy estate in his wife's subsequent chapter 7 case.

If the house is indeed property of the second bankruptcy estate, and if the

trustee is the same for both bankruptcy cases, the Court must consider

whether the trustee's actions in relation to the property in either case limits

his ability to avoid a post-petition transfer of an interest in the property in

the second bankruptcy case.

---

[1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION - 2

**Facts**

David and Nichole Herter, as husband and wife, purchased a home in Pocatello ("the Property") in 2002. *See* Dkt. No. 15-2, Ex. B.[2] At the time, they executed a deed of trust on the Property in favor of the predecessor in interest to Midland Mortgage Co. ("Midland") to secure a loan of $74,760. *Id.* In 2006, David and Nichole[3] executed a second deed of trust against the Property in favor of another creditor, Defendant Idaho State University Federal Credit Union ("ISUFCU"), to secure a revolving credit line of $27,500. Dkt. No. 15-3, Ex. C.

On October 28, 2008, in anticipation of divorce, David and Nichole executed a self-drafted stipulated divorce decree. Dkt. No. 26, Ex. A. In it, among other terms, David and Nichole agreed that they "have a community interest in" the Property, and that the Property "shall be sold and the net proceeds divided 50% to [Nichole] and 50% to [David]." *Id.*

---

[2] Unless otherwise indicated, all cited documents refer to the adversary proceeding docket, Adv. No. 10-8093.

[3] References to Debtors' first names is solely for the clarity of this decision; no disrespect is intended.

MEMORANDUM OF DECISION - 3

Having agreed to the terms of a proposed divorce decree, David and
Nichole then separately filed for chapter 7 bankruptcy relief.  The relevant
facts of each bankruptcy case are discussed in more detail below.
However, some of the fundamental facts are appropriately set forth here.

First, David filed his bankruptcy petition on November 7, 2008,
while Nichole filed hers on November 19, 2008.  Bankr. No. 08-41117, Dkt.
No. 1; Bankr. No. 08-41160, Dkt. No. 1.  Second, while David and Nichole
agreed pre-bankruptcy, as between themselves, to the terms to be
incorporated in their divorce decree, the state court, for reasons unknown
to the Court, did not enter the decree until November 26, 2008, after the
bankruptcy filings.  Dkt. No. 26-1, Ex. A.  And finally, while David's
bankruptcy case was closed on February 12, 2009, Bankr. No. 08-41117,
Dkt. No. 28, Nichole's case remains open.

## I.      David's bankruptcy case.

As noted above, on November 7, 2008, David filed a chapter 7
petition.  Bankr. No. 08-41117, Dkt. No. 1.  Plaintiff R. Sam Hopkins
("Trustee") was appointed to serve as the chapter 7 trustee.

MEMORANDUM OF DECISION - 4

David listed the Property on his Schedule A, and claimed an Idaho

homestead exemption in the Property on Schedule C.  *Id.*  David's

Schedule D indicated two creditors held debts secured by the Property:

Midland, with a claim of $61,377.70; and ISUFCU, with a claim of

$27,027.21.  *Id.*

There is some indication in the record that David believed his and

Nichole's signing of the stipulated divorce decree had legal consequences.

His bankruptcy schedules characterize Nichole as his "Ex-wife" and his

marital status as "single."  *Id.*  He left the Schedule A column for

characterizing the Property as separate, joint, or community property

blank.[4]  *Id.*  In addition, David's Schedule B list of personal property

includes a "domestic support obligation from Nicole (sic) Herter for [their

daughter]" for $240 per month, which he claims as exempt on Schedule C.

*Id.*  That domestic support obligation is also a product of the couple's

---

[4] The schedule A instructions read: "*If the debtor is married*, state whether
the husband, wife, both, or the marital community own the property . . . ."
(emphasis added).  If, when completing his petition, David believed he was no
longer married, he may also have assumed there was no duty to characterize his
Schedule A property.

MEMORANDUM OF DECISION - 5

stipulated divorce decree.  *See* Dkt. No. 26-1, Ex. A.

On January 12, 2009, David's counsel, Trustee, and ISUFCU

stipulated to entry of an order for relief from the automatic stay as to the

Property for ISUFCU.  Bankr. No. 08-41117, Dkt. No. 21.  The Court

entered the order on February 8, 2009.  *Id.*, Dkt. No. 22.

On January 22, 2009, Midland also moved for automatic stay relief

for the Property.  *Id.*, Dkt. No. 18.  When no party objected to Midland's

motion, the Court ordered relief on February 12, 2009.  *Id.*, Dkt. Nos. 26, 27.


Also on February 12, 2009, the Court entered an order granting

David a bankruptcy discharge, *id.*, Dkt. No. 25, and an order discharging

Trustee from his duties and closing David's bankruptcy case, *id.*, Dkt. No.

28.

## II.   Nichole's bankruptcy case.

Nichole filed her chapter 7 bankruptcy petition on November 19,

2008.  Bankr. No. 08-41160, Dkt. No. 1.  Mr. Hopkins was also appointed

trustee in that case.

MEMORANDUM OF DECISION - 6

Nichole listed the Property on her Schedule A, and, like David, did not characterize the Property as separate, joint, or community.  *Id.*  She did not claim an exemption in the Property.  *See id.*

Nichole indicated Midland and ISUFCU were both owed debts secured by an interest in the Property.  *Id.*  In her Statement of Intention, Nichole indicated it was her intent to surrender the Property to Midland. *Id.*[5]

Whereas David's petition indicates he may have believed the couple's divorce decree was legally effective when they signed it, Nichole's petition, schedules, and statements certainly do not convey that impression.  Instead, Nichole's petition characterizes David as her "nondebtor spouse," her marital status as "married," and her divorce as "pending."  *Id.*  She filed a Statement of Domestic Support Obligations the same day that she filed her petition, though she indicated the obligation, $240 per month to David, would not start until "11/2008."  *Id.*, Dkt. No. 8.

---

[5] It is undisputed that the Property was never surrendered.

MEMORANDUM OF DECISION - 7

Trustee and ISUFCU signed a stay relief stipulation as to the

Property on January 12, 2009. *Id.*, Dkt. No. 21. Nichole's counsel signed

the stipulation January 20, 2009, *id.*, and the Court ordered relief on

February 9, 2009, *id.*, Dkt. No. 22.

Nichole was granted a discharge on March 5, 2009. *Id.*, Dkt. No. 27.

On May 22, 2009, Midland filed a motion for stay relief as to the

Property. *Id.*, Dkt. No. 40. No one objected to Midland's motion, and the

Court ordered relief on June 15, 2009. *Id.*, Dkt. Nos. 43, 44.

On June 25, 2009, Midland recorded a Notice of Default for the

Property under its deed of trust. Dkt. No. 15-10, Ex. J. A Notice of

Trustee's Sale was mailed to Debtors on June 30, 2009, indicating a

trustee's sale of the Property scheduled for November 3, 2009. Dkt. No.

15-11, Ex. K.

On August 31, 2009, Nichole executed, and apparently delivered, a

quit-claim deed conveying her interest in the Property to David. Dkt. No.

15-12, Ex. L. David then closed a loan from ISUFCU for $102,000 to

refinance the Property in exchange for a new deed of trust, which was

MEMORANDUM OF DECISION - 8

recorded September 1, 2009.  Dkt. No. 15-13, Ex. M.  The loans of both

Midland and ISUFCU were presumably satisfied by the new loan's

proceeds, and the deeds of trust securing those loans were released.  Dkt.

No. 14.  The "new" deed of trust securing the refinance loan to ISUFCU is

the only remaining lien on the Property.  *Id.*

### III.   This adversary proceeding.

In his status as trustee in Nichole's bankruptcy case, Trustee

commenced this adversary proceeding against David and ISUFCU on

October 14, 2010.  Dkt. No. 1.  In his complaint, Trustee seeks to avoid and

recover the transfer effected by the deed from Nichole to David, and the

deed of trust from David to ISUFCU, as postpetition transfers under

§§ 549(a) and 550.  *Id.*  David and ISUFCU filed a joint answer denying

Trustee's right to such relief; they also filed a counterclaim alleging

Trustee's attempts to avoid the transfers constitute a breach of the parties'

stay relief stipulation, and seeking attorneys' fees and costs .  Dkt. No. 6.

On April 5, 2011, David and ISUFCU filed a motion for summary

judgment, a brief, a statement of undisputed facts, and affidavits, in which

MEMORANDUM OF DECISION - 9

they argue that (1) the Property was not part of Nichole's bankruptcy estate when the targeted transfers were made; (2) Trustee should be estopped from avoiding the transfers due to his actions regarding the Property in both David and Nichole's bankruptcy cases; and (3) even if Nichole's bankruptcy estate initially had an interest in the Property, Trustee forfeited that interest when he did not object to her stated intent to surrender the Property to Midland.  Dkt. Nos. 12–17.

Trustee filed a response opposing the summary judgment motion, a statement of disputed and undisputed facts, and opposing affidavits on April 25, 2011.  Dkt. Nos. 21–26.

David and ISUFCU filed a reply on May 2, 2011.  Dkt. No. 27.

A hearing on the summary judgment motion was held May 10, 2011. Supplemental briefs were submitted by David and ISUFCU on May 24, 2011, Dkt. No. 31, and by Trustee on June 7, 2011, Dkt. 32.  The issues having been fully argued, and having considered the record, the parties' submissions, and applicable law, this Memorandum disposes of the motion.  Rules 7052, 9014.

MEMORANDUM OF DECISION - 10

## Discussion

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 7056 (incorporating Fed. R. Civ. P. 56(a)).  Here, the parties agree that, while there may be some disputed facts peripheral to the current motion for summary judgment,[6] there is no genuine issue as to any material fact.  Therefore, David and ISUFCU may be awarded summary judgment, if it can be shown they are entitled to judgment as a matter of law.  The Court now examines each of David's and ISUFCU's theories to make that determination.

**I.**    **Nichole's bankruptcy estate included an interest in the Property.**

    **A.**    **David and Nichole's execution of the stipulated divorce decree did not transmute their community interests in the Property.**

David and ISUFCU argue that, as community property, the Property was part of David's bankruptcy estate.  In contrast, Trustee asserts David

---

[6] For instance, the parties have not agreed on the Property's value.

MEMORANDUM OF DECISION - 11

and Nichole's October 28, 2008, stipulated divorce decree was legally

sufficient to separate their interests in the Property, such that Nichole's

"new" separate property interest in the Property did not become property

of David's bankruptcy estate.

The filing of a bankruptcy petition creates a bankruptcy estate that

includes not only all of a debtor's legal or equitable interests in property,

but also all community property interests of both the debtor and the

debtor's spouse over which the debtor has control as of the case's

commencement.  §§ 541(a)(1), (a)(2).[7]  A bankruptcy estate, however, does

---

[7] Section 541(a)(2) provides:

> The commencement of a case . . . creates an estate.
> Such estate is comprised of all the following property,
> wherever located and by whomever held:
>> ****
>> (2)  All interests of the debtor and the debtor's
>> spouse in community property as of the
>> commencement of the case that is—
>>> (A) under the sole, equal, or joint management
>>> and control of the debtor; or
>>> (B) liable for an allowable claim against the
>>> debtor, or for both an allowable claim against
>>> the debtor and an allowable claim against the
>>> debtor's spouse, to the extent that such interest

(continued...)

MEMORANDUM OF DECISION - 12

not include a non-debtor spouse's separate property.  *See In re Bauer*, 05.3

I.B.C.R. 60, 61 (Bankr. D. Idaho 2005).  To determine whether property is

community property, and is thereby integrated into a bankruptcy estate,

the Court looks to state law.  *Id.*

Idaho is a community property state.  *See* Idaho Code §§ 32-901 to

32-929.  Underlying Idaho's community property scheme is a presumption

that all property acquired during marriage is community property.  *Winn*

*v. Winn*, 673 P.2d 411, 413 (Idaho 1983) (citing *Stanger v. Stanger*, 571 P.2d

1126 (Idaho 1977)).  To rebut that presumption, a party must prove

property's separate character with reasonable certainty and particularity.

*See id.*; *Freeburn v. Freeburn* (*In re Estate of Freeburn*), 555 P.2d 385, 389

(Idaho 1976).

Whether property is community or separate is determined when it is

acquired.  *Kraly v. Kraly*, 208 P.3d 281, 285 (Idaho 2009) (citing *Winn*, 673

P.2d at 415).  Despite that initial determination, Idaho spouses may

───────────────

[7](...continued)
                is so liable.

MEMORANDUM OF DECISION - 13

transmute property's character from separate to community, or vice versa.
*See Wolford v. Wolford*, 785 P.2d 625, 630 (Idaho 1990) (quoting *Stockdale v.
Stockdale*, 643 P.2d 82, 85 (Idaho Ct. App. 1982)).  The primary method of
doing so is via a marriage settlement agreement.  Idaho Code § 32-916; *see
Suchan v. Suchan*, 682 P.2d 607, 613 (Idaho 1984).

An effective marriage settlement agreement must contain an "actual,
articulated intent" that the property in question be changed from one
character to another.  *See Winn*, 673 P.2d at 414.  In addition, it must meet
certain statutory requirements.  Idaho Code §§ 32-917; 32-918.  Marriage
settlement contracts must be written, executed and acknowledged, or
proved in the same manner as land conveyances.  Idaho Code § 32-917.
The agreement must then be recorded in every county recorder's office
where real estate affected by the settlement is located.  Idaho Code § 32-
918.

Trustee, as the party asserting a transmutation, has not shown the
Property was no longer community property when David filed his
bankruptcy petition.  The parties have submitted a portion of a stipulated

MEMORANDUM OF DECISION - 14

divorce decree that was, presumably, signed by the parties before being

entered by the state court.  In the homemade, boilerplate provisions of this

decree, David and Nichole agree the Property "shall be sold and the net

proceeds divided 50% to the Wife and 50% to the Husband."  Viewed as

the spouses' agreement, while the language of the proposed decree

certainly evinces their actual, articulated intent that the Property be sold

and the proceeds divided, and while there is some evidence that David

may have believed the decree to be effective when signed, it is not at all

clear that both David and Nichole intended any division of ownership as

to the Property to occur on October 28, 2008, when the decree was signed

by the parties.  This is buttressed by the fact that David later solicited and

obtained a quit-claim deed from Nichole transferring the Property to him.

In addition, the copy of the stipulated divorce decree presented to the

Court is not signed, executed, or acknowledged,[8] and there was nothing

submitted to the Court to show it was ever recorded in the real property

---

[8]  The Court has a copy of a signed parenting plan between David and
Nichole.  Dkt. No. 26-1, Ex. A.  The divorce decree, however, does not include
signatures or any type of acknowledgment.  *Id.*

MEMORANDUM OF DECISION - 15

records of Bannock County.

In other words, the Court has not been shown that David and

Nichole's execution of the stipulated divorce decree transmuted their

community interests in the Property into separate interests prior to David

filing for bankruptcy.

**B.** **An interest in the Property passed into Nichole's bankruptcy estate after David's bankruptcy case closed.**

Recall, the divorce decree was not entered by the state court until

after David filed his bankruptcy petition.  Assuming Nichole's interest in

the Property was not her separate property on his filing date, the question

is:  what interests in the Property, if any, passed into David's, and then,

later, into Nichole's bankruptcy estate?

**1.** **David's bankruptcy estate.**

**a.** **David's bankruptcy estate included the spouses' community interests in the Property throughout his bankruptcy case.**

Even if spouses are in the process of divorce when one of them files

for bankruptcy, as long as the divorce has not been finalized and property

MEMORANDUM OF DECISION - 16

has not yet been divided by the state court's decree, all community

property becomes part of the bankruptcy estate of the debtor-spouse.

§ 541(a)(2); *see Dumas v. Mantle* (*In re Mantle*), 153 F.3d 1082, 1085 (9th Cir.

1998); *In re Kido*, 142 B.R. 924, 925–26 (Bankr. D. Idaho 1992) ("[W]here one

party to the community files a petition for relief, the provisions of 11

U.S.C. § 541(a)(2) cause the community property interests of both parties,

or, the entire community, to become property of the estate, at least, in

Idaho where the community property is under the control and

management of both parties.").  Including community property in one

spouse's chapter 7 bankruptcy estate allows creditors with separate claims

against the filing spouse, as well as creditors with community claims

against either the filing or non-filing spouse, to participate in distributions

and otherwise in the debtor's bankruptcy.  *See* H.R. REP. NO. 95-595, at 366

(1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6322 ("[Section 541(a)] also

codifies the split discharge for debtors in community property states.  If

community property was in the estate and community claims were

discharged, the discharge is effective against community creditors of the

MEMORANDUM OF DECISION - 17

nondebtor as well as of the debtor spouse.").

In Idaho, all property acquired by either a husband or wife after marriage is community property.  Idaho Code § 32-906.  Both husband and wife have the equal right to manage and control such property.  Idaho Code § 32-912.  Thus, when David filed for bankruptcy, his bankruptcy estate included both his and Nichole's community interests in the Property.

Not all property included in a bankruptcy estate, however, remains in the estate.  *Mwangi v. Wells Fargo Bank, N.A.* (*In re Mwangi*), 432 B.R. 812, 820 (9th Cir. BAP 2010).  The Bankruptcy Code allows debtors to exempt certain property, and, thereby, attempt to reclaim an interest in the property and protect it from the reach of the trustee for satisfaction of creditors' claims.  *Schwab v. Reilly*, __ U.S. __, 130 S.Ct. 2652, 2663–64 (2010).  To do so, a debtor must file a list of property claimed as exempt, and, unless an interested party objects to that claim, "the property claimed as exempt on that list is exempt."  § 522(l); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992).  The Code's exemption statutes, found in § 522,

MEMORANDUM OF DECISION - 18

provide a federal exemption scheme while also allowing states to "opt out" of the federal scheme, and, instead, limit a debtor's exemptions to those authorized by state law. § 522(b)(1). Idaho has opted out. Idaho Code § 11-609.

Idaho's statutes limit a debtor's homestead exemption to no more than $100,000 of a homestead's value. Idaho Code § 55-1003. That protection extends to the entire homestead, and a married debtor may protect "the community or jointly owned property of the spouses or the separate property of either spouse . . . ." Idaho Code § 55-1002. While other Idaho statutes limit a debtor's exemption to his undivided interest in property,[9] the homestead exemption statute specifically provides that a debtor may exempt an interest in community property.[10] *Id.*; *Fitzgerald v.*

---

[9] Many Idaho exemptions provide that an "*individual* debtor" may exempt property up to a certain value. *See, e.g,* Idaho Code §§ 11-605(1)–(3), (8), (10), (11) (emphasis added). In such cases, a debtor may not claim a non-filing spouse's community interest in the subject property as exempt. *In re DeHaan*, 275 B.R. 375, 381–82 (Bankr. D. Idaho 2002).

[10] Of course, if exempt property is sold, while up to $100,000 in value is exemptable, each spouse is only entitled to one-half of any exempted equity in

(continued...)

MEMORANDUM OF DECISION - 19

*Clarke* (*In re Taylor-Clarke*), 99.4 I.B.C.R. 164, 165 (Bankr. D. Idaho 1999)

("[Idaho Code § 55-1002] does not limit the homestead exemption to

merely the debtor's undivided interest in community property. To the

contrary, the homestead exemption goes so far as to allow a debtor to

exempt even the separate property of a spouse, so long as that property is

used as a homestead.").

Even where exemptions are properly claimed, however, if the

exemption is in an asset's value, the exemption does not remove the asset

from a bankruptcy estate; it merely guarantees the debtor payment in the

exemption's dollar amount. *Schwab*, 130 S.Ct. at 2667. Such is the case

with Idaho's homestead exemption. *See* Idaho Code § 55-1003. David

claimed an exemption in his and Nichole's community property

homestead, thereby protecting up to $100,000 in the homestead's value

from the potential reach of creditors. While, when no one objected to his

claim, David's homestead exemption was deemed allowed, this exemption

---

[10](...continued)
community property.

MEMORANDUM OF DECISION - 20

did not remove the Property from his bankruptcy estate.

### b. **David and Nichole's divorce decree became effective, and separated their interests in the Property, at the closing of David's bankruptcy case.**

Not only is a bankruptcy estate created with the filing of a bankruptcy petition, but an automatic stay also arises to protect the debtor and property of the estate against certain, specified acts, including acts by others to exercise control over property of the estate.  § 362(a)(3).  Because it applies against "all entities," the automatic stay even prevents most state court actions.  *Id.*; *Sternberg v. Johnston*, 595 F.3d 937, 944 (9th Cir. 2010).  In the divorce context, however, a bankruptcy filing by one spouse does not prevent a state court from dissolving a marriage due to the automatic stay.  § 362(b)(2)(A)(iv).[11]  At the same time, however, the stay does prevent a

---

[11]  Section 362(b)(2)(A)(iv) provides:

The filing of a petition . . . does not operate as a stay—
  (2) under subsection (a)—
    (A) of the commencement or continuation of a civil action or proceeding—
    ****
      (iv) for the dissolution of a marriage, except to the extent that such proceeding seeks to

(continued...)

MEMORANDUM OF DECISION - 21

state court from dividing divorcing parties' property.  *Id.*

The automatic stay continues to shield property as long as that property is part of the bankruptcy estate.  § 362(c)(1); *In re Jackson*, 403 B.R. 95, 98 (Bankr. D. Idaho 2009).  Actions taken in violation of the automatic stay are void.  *Griffin v. Wardrobe* (*In re Wardrobe*), 559 F.3d 932, 934 (9th Cir. 2009) (quoting *Gruntz v. County of Los Angeles* (*In re Gruntz*), 202 F.3d 1074, 1082 (9th Cir. 2000)) ("[A]ctions, including judicial proceedings, 'taken in violation of the automatic stay are void.'"); *Hopkins v. Suntrust Mortg., Inc.* (*In re Ellis*), 441 B.R. 656, 662 (Bankr. D. Idaho 2010) (citing *Schwartz v. United States* (*In re Schwartz*), 954 F.2d 569, 571 (9th Cir. 1992)).

Property remains in a bankruptcy estate until it is administered (*i.e.,* sold or transferred to another), abandoned, or the bankruptcy case is dismissed, at which time it reverts to the parties as if no petition had been filed.  § 349(3); *see also, Dewsnup v. Timm*, 908 F.2d 588, 590 (10th Cir. 1990), *aff'd, on other grounds*, 502 U.S. 410 (1992); *In re Taylor-Clarke*, 99.4 I.B.C.R. at

---

[11](...continued)
              determine the division of property that is property of the estate.

MEMORANDUM OF DECISION - 22

165 (quoting *Heintz v. Carey* (*In re Heintz*), 198 B.R. 581, 585 (9th Cir. BAP

1996)).  Abandonment occurs, among other ways, if a scheduled asset is

not administered by the case trustee at the time a bankruptcy case is

closed.  § 554(c).

Here, the state court entered David and Nichole's divorce decree on

November 26, 2008, a few days after they filed their bankruptcy petitions.

At that time, David and Nichole's marriage was dissolved but, since the

Property had become part of David's bankruptcy estate, the automatic stay

prevented the divorce decree from dividing the parties' community

property.  As a result, any provisions of the state court decree purporting

to divide the couple's interests in community property were void and

ineffective.

However, when David's bankruptcy case was closed on February

12, 2009, the Property had not been administered, and, as a result, it was

deemed abandoned at that time, no longer protected by the automatic

stay.  The Property was again subject to the divorce court's power to

divide the spouses' community property.  In short, it was not until the

MEMORANDUM OF DECISION - 23

closing of David's bankruptcy estate that David and Nichole's community

interests in the Property could effectively be transmuted to separate

interests.

Yet, when fairly construed, the divorce decree in this case did not

completely dispose of the parties' community interests in the Property.

Recall, it provides: "[The Property] shall be sold and the net proceeds

divided 50% to the Wife and 50% to the Husband." Missing from the

decree is any indication of who owns the Property between the effective

date of the divorce and when it is sold. Under Idaho law, where a divorce

decree does not dispose of community property, former spouses own the

property as tenants in common. *See Quinlan v. Pearson*, 225 P.2d 455, 456

(Idaho 1950); *Clark v. Clark*, 868 P.2d 501, 503 (Idaho Ct. App. 1994); *Carr v.

Carr*, 779 P.2d 422, 428 (Idaho Ct. App. 1989). Therefore, as of February 12,

2009, the date of the closing of David's bankruptcy estate, David and

Nichole effectively each owned an undivided one-half interest in the

Property as tenants in common.

## 2. **Nichole's bankruptcy estate.**

MEMORANDUM OF DECISION - 24

Nichole filed her bankruptcy petition twelve days after David filed

his.  Generally, a debtor's bankruptcy estate includes "all legal or equitable

interests of the debtor in property as of the commencement of the case."

§ 541(a)(1).  However, where two spouses file asynchronous bankruptcy

petitions in a community property state, the couple's community property

interests pass to the first-spouse-to-file's bankruptcy estate; all that enters

the second-spouse-to-file's bankruptcy estate are her separate property

interests.  § 541(a)(2); *In re Bauer*, 05.3 I.B.C.R. at 61–62; *In re Pixler*, 02.2

I.B.C.R. 87, 88 (Bankr. D. Idaho 2002).

As a general rule, the date a bankruptcy petition is filed serves to

delineate whether property is, or is not, part of a debtor's bankruptcy

estate.  *See* § 541(a)(1).  Under § 541(a)(5), however, certain types of

property interests acquired within 180 days *after* the filing of a bankruptcy

petition also become property of a debtor's estate.  Among those after-

acquired interests are any that a debtor acquires "as a result of a property

settlement agreement with the debtor's spouse, or of an interlocutory or

MEMORANDUM OF DECISION - 25

final divorce decree." § 541(a)(5)(B).[12]

David and Nichole's divorce decree effectively divided their

property, but not until David's bankruptcy case closed on February 12,

2009. Of course, that was within 180-days of the date Nichole filed her

November 19, 2008, bankruptcy petition. Consequently, since under the

divorce decree Nichole held a one-half interest in the Property as a tenant

in common, that interest immediately passed into her bankruptcy estate on

February 12, 2009, per § 541(a)(5)(B).

Closing the circle, then, David and ISUFCU are not entitled to

_____

[12] In full, § 541(a)(5)(B) provides:

> (a) The commencement of a case . . . creates an estate.
> Such estate is comprised of all the following property,
> wherever located and by whomever held:
> ****
> (5) Any interest in property that would have been
> property of the estate if such interest had been an
> interest of the debtor on the date of the filing of the
> petition, and that the debtor acquires or becomes
> entitled to acquire within 180 days after such date—
> ****
> (B) as a result of a property settlement agreement
> with the debtor's spouse, or of an interlocutory or
> final divorce decree.

MEMORANDUM OF DECISION - 26

summary judgment.  Their argument that the Property never became part
of Nichole's bankruptcy estate is incorrect.  The Property was property of
Nichole's bankruptcy estate on and after February 12, 2009; including on
August 31, 2009, when Nichole purported to transfer her interest to David,
and on September 1, 2009, when David purported to convey a lien on the
Property to ISUFCU.  Because these transfers included an interest in
property of Nichole's bankruptcy estate, if all other required elements are
shown to exist, the transfers may be vulnerable to avoidance by Trustee
under § 549(a).

## II.    The doctrine of equitable estoppel does not prevent Trustee from avoiding Nichole's transfer of her interest in the Property to David.

David and ISUFCU argue that, under the doctrine of equitable
estoppel, Trustee may not pursue avoidance of the Property transfers.  The
Court disagrees.

First, it is important to understand who may assert equitable
estoppel in the context of this bankruptcy case.  Estoppel is a defense that
may be raised only by a party who relied upon the actions of another to his

MEMORANDUM OF DECISION - 27

detriment.  *See United States v. Howell* (*In re Howell*), 120 B.R. 137, 140 (9th

Cir. BAP 1990) (identifying the elements to prove estoppel).  Under these

facts, David and ISUFCU may not assert estoppel against Trustee to bar his

action to avoid a transfer by Nichole.  Put another way, since it was

Nichole that allegedly relied on Trustee's actions in making the transfer of

an interest in the Property by quit-claim deed to David, David and ISUFCU

cannot estop Trustee from seeking to undo that transfer.

Similarly, ISUFCU may not assert estoppel against Trustee to bar his

avoidance action against David in making the transfer to ISUFCU.  Again,

the equitable estoppel defense, if proper at all, must be analyzed as

between Trustee and the respective transferor, in this instance, David.

David maintains Trustee should be equitably estopped from

pursuing a § 549 avoidance action targeting his grant of a security interest

to ISUFCU.  In deciding to transfer an interest in Nichole's bankruptcy

estate property, David asserts he relied on Trustee's response to various

motions and statements affecting the Property in Nichole's bankruptcy

case, and on Trustee's inaction in allowing David to claim an exemption in

MEMORANDUM OF DECISION - 28

the Property's value and to otherwise allow the Property to pass through
his own bankruptcy case without administering it.  Defendants' Summary
Judgment Memorandum at 4–7, Dkt. No. 13.  Upon close examination of
the record, though, David's reliance on estoppel as a defense to Trustee's
action is misplaced because the doctrine of equitable estoppel exists to
"prevent[] a party from assuming inconsistent positions to the detriment
of another party."  *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 95–96
(9th Cir. 1970).  Under these facts, Trustee has not taken a position
inconsistent with his role as a chapter 7 case trustee.

### A. <u>Trustee's actions in David's bankruptcy case do not warrant estopping him from acting in Nichole's bankruptcy case</u>.

David asserts Trustee should be estopped from administering
Nichole's interest in the Property in her bankruptcy case because Trustee
did not administer the Property in David's case, resulting in the Property's
abandonment in his case.

A chapter 7 trustee's charge is to maximize recovery for creditors by
maximizing the bankruptcy estate's assets.  *United States v. Sims* (*In re*

MEMORANDUM OF DECISION - 29

*Feiler*), 218 F.3d 948, 952 (9th Cir. 2000).  Inherent in doing so, a trustee

must consider a property's value to determine the appropriate action

respecting that property.  If there is no equity in an estate asset, there is

little motivation for a chapter 7 trustee to incur the expense of

administering the asset.  *See* § 554(a) (identifying one of the justifications

for a trustee's abandonment of property as a lack of value to the estate).

In David's bankruptcy case, there was no equity in the Property for

Trustee to liquidate for creditors.  At the time, the Property was

encumbered by two liens, and David claimed an exemption in $100,000 of

the homestead's value beyond those liens.  Trustee's decision to not incur

costs in administering the Property, which likely would have yielded

nothing for David's bankruptcy estate had Trustee pursued liquidation,

was, therefore, consistent with his role and duties as a chapter 7 trustee.

Trustee's actions and approach to the Property in Nichole's case are

similarly consistent with his chapter 7 trustee role and duties.  Nichole's

bankruptcy case remains active and open, and, as things now stand, only

one lien encumbers the Property, a lien that, along with a transfer of

MEMORANDUM OF DECISION - 30

Nichole's interest in the Property to David, may potentially be avoidable by Trustee pursuant to § 549(a). If Trustee avoids that lien, there may now be equity in the Property available to Nichole's bankruptcy estate. Seen in this fashion, Trustee's pursuit of that equity is not inconsistent with his decision to not liquidate the Property in David's case, when there was no potential equity to David's bankruptcy estate.

Trustee has not acted inconsistently in Nichole's case from his approach to his chapter 7 duties in David's case. In both cases, he evaluated the potential value in the Property to the pertinent bankruptcy estate under the facts, and acted accordingly.

**B.** **Trustee's actions in Nichole's bankruptcy case do not warrant estopping him from acting to avoid David's transfer to ISUFCU**.

David asserts Trustee should be estopped from pursuing his § 549(a) action in Nichole's case because he previously decided not to object to relief from the automatic stay as to Midland, and, indeed, stipulated to such relief as to ISUFCU, in that case.

The value of property within a bankruptcy estate, and, therefore, the

MEMORANDUM OF DECISION - 31

property's value to the estate, may change over the course of a bankruptcy

case. *See Gebhart v. Gaughan* (*In re Gebhart*), 621 F.3d 1206, 1211–12 (9th Cir.

2010). A trustee's motivation to administer an interest in property (or not)

may also change as a bankruptcy case progresses, particularly if there is an

increase in equity available to the bankruptcy estate. *See id.; Hyman v.*

*Plotkin* (*In re Hyman*), 123 B.R. 342, 348 (9th Cir. BAP 1991) (explaining that,

where there is no equity in an asset, there is no reason for a trustee to

object to actions affecting the asset; and, when that is the case, a trustee's

failure to speak is not misleading and does not estop the trustee from later

objecting if the asset's value changes). As long as a trustee has not

affirmatively abandoned an interest in property of the estate in a particular

case, he has not evinced an intent to relinquish the bankruptcy estate's

interest in the property. *In re Hyman*, 123 B.R. at 348 (quoting *Bateman v.*

*Grover* (*In re Berg*), 45 B.R. 899, 903 (9th Cir. BAP 1984) ("Abandonment

requires affirmative action or some other evidence of intent by the

trustee.")). Not responding to a motion for relief from the automatic stay,

or even stipulating to such relief, is not conclusive evidence of a trustee's

MEMORANDUM OF DECISION - 32

intent to abandon a bankruptcy estate's interest in property. *Catalano v. Comm'r of Internal Revenue*, 279 F.3d 682, 686–87 (9th Cir. 2002) (indicating that relief from the automatic stay only modifies the injunction prohibiting actions against the debtor or the debtor's property, and "does not mean that the estate's interest in the property is extinguished.").

Contrary to the argument of David and ISUFCU, on these facts, it is clear that Trustee did not intend to abandon the bankruptcy estate's interest in the Property during Nichole's bankruptcy case. While he consented to stay relief in favor of several of Nichole's creditors, Trustee's decision to do so was based on an equity analysis at the time each motion for relief was made. At such times, the Property was subject to two nonavoidable trust deeds. However, while the Property remained property of Nichole's bankruptcy estate, those deeds of trust were released. Trustee's actions, or inaction, during the pendency of Nichole's bankruptcy case can not prevent him from now pursuing an equity in the Property that only became available through Nichole's and David's

MEMORANDUM OF DECISION - 33

apparently unauthorized postpetition transfers.[13]  Indeed, in prosecuting

this action, Trustee is fulfilling his statutory duty as a chapter 7 case

trustee to maximize recovery for unsecured creditors; he should not be

estopped from doing so.

In addition to the legal justifications for not estopping Trustee from

performing his duties as a chapter 7 case trustee in this case, there are

strong policy reasons against doing so.  A "prime bankruptcy policy" is to

achieve equality of distribution among creditors of a debtor.  H.R. REP. NO.

95-595, at 177–78 (1977).  The chapter 7 trustee system helps sustain that

policy by preventing a race to obtain and liquidate assets by individual

creditors, and by providing representation to creditors who might not

otherwise be able to afford to participate in the distribution process.  *See*

*id*.; *Heath v. Am. Express Travel Related Servs. Co., Inc.* (*In re Heath*), 331 B.R.

---

[13]  Of course, David and ISUFCU did not need to "guess" about whether
Trustee intended to administer, or to abandon, the Property.  Any uncertainties
about Trustee's goals could have been quickly dispelled if they, or Nichole, had
simply filed a motion to deem the Property abandoned from Nichole's
bankruptcy estate, thereby effectively removing it from Trustee's reach before
the postpetition transfers occurred..  *See* § 554(b).  That they did not resort to this
ready remedy weighs heavily against David's and ISUFCU's claim of inequity.

MEMORANDUM OF DECISION - 34

424, 429 (9th Cir. BAP 2005).  Allowing an individual creditor, or a subset

of creditors, to prevent a trustee from fulfilling his statutory duties to the

bankruptcy estate based upon his personal conduct would frustrate one of

the Bankruptcy Code's primary tools to ensure the protection of *all*

creditors' rights, and should not be supported by the Court absent

compelling circumstances.  *See also Hirschfield v. McKinley*, 78 F.2d 124, 135

(9th Cir. 1935) (explaining that a chapter 7 trustee represents the interests

of all unsecured creditors, and not any particular individual creditor or

group of creditors).

      Summary judgment for David and ISUFCU is not appropriate based

on any theory that Trustee be equitably estopped.

**III.**   **Trustee did not forfeit Nichole's bankruptcy estate's interest in the Property by not ensuring Nichole performed her stated intention in regards to the Property.**

      Finally, David and ISUFCU assert that Trustee forfeited any interest

in the Property for Nichole's bankruptcy estate when he did not ensure

Nichole performed her Statement of Intention as to the Property.  David

and ISUFCU's argument rests on §§ 521(a)(2) and 704(a)(3).

MEMORANDUM OF DECISION - 35

Section 521(a)(2) identifies duties of an individual debtor if that

debtor's schedule of assets and liabilities includes debts secured by

property of the estate.[14]   Not only does a chapter 7 debtor have a duty to

---

[14] Section 521(a)(2) provides:

> (a) The debtor shall—
> ****
> (2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate—
>
> > (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property or that the debtor intends to reaffirm debts secured by such property; and
> >
> > (B) within 30 days after the first date set for the meeting of creditors under section 341(a) or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph;
>
> except that nothing in subparagraphs (A) and (B) of

(continued...)

MEMORANDUM OF DECISION - 36

file a statement of intention with regard to any debts secured by property

of the estate, she must typically also perform that intention within 30 days

of the first date set for her § 341 meeting.[15]  § 521(a)(2)(A), (B).  The

§ 521(a)(2)(A) and (B) time frames, however, have been interpreted as

merely providing procedural guidelines.  *See In re Bracamortes*, 166 B.R.

160, 162 (Bankr. S.D. Cal. 1994).  As such, the expiration of these time

periods serve as a signal to creditors to pursue their rights against

collateral securing debtors' debts.  *Id.*

Section 704(a) identifies a chapter 7 trustee's duties and, in relevant

part, provides:

> (a) The trustee shall—
> ****
> (3) ensure that the debtor shall perform his intention as

------

[14](...continued)
> this paragraph shall alter the debtor's or the trustee's
> rights with regard to such property under this title,
> except as provided in section 362(h).

[15]  The Court finds it interesting that David, who did not fulfill any of his
own § 521(a)(2) duties because he did not file a complete Statement of Intention,
now desires to use § 521(a)(2), as incorporated into § 704(a)(3), to frustrate
Trustee's fulfillment of his responsibilities.

MEMORANDUM OF DECISION - 37

specified in section 521(a)(2)(B)[16] of this title.

In essence, David and ISUFCU argue that § 704(a)(3) imposes a duty on a

chapter 7 trustee to verify whether a chapter 7 debtor has performed its

stated intention, and, if not, to move the Court to compel the debtor to

perform that intention.  If a trustee does not do so, David and ISUFCU

suggest the trustee forfeits the bankruptcy estate's interest in the property

that is subject to the stated intention.

This argument assumes too much about the relationship of these

provisions of the Code.  Section 704(a)(3) requires nothing more of chapter

7 trustees than § 521(a)(2)(B) requires of debtors.  Just as § 521(a)(2)(B)

provides a "procedural guideline" for debtors, it provides nothing more

for trustees.  After the § 521(a)(2)(B) time period has passed, a creditor may

ask the court to compel a debtor's performance, or it may opt for the less

efficient alternative of requesting the chapter 7 trustee to petition the court

---

[16] The Bankruptcy Technical Corrections Act of 2010 updated § 704(a)(3) to correctly refer to § 521(a)(2)(B), rather than § 521(2)(B).  Pub. L. 111-327, § 2(a)(24).

MEMORANDUM OF DECISION - 38

for performance.[17]  *See In re Bayless*, 78 B.R. at 510 (indicating that, absent a

creditor requesting the trustee's involvement, a trustee may assume a

debtor has performed her stated intention).  *See also In re Gregg*, 199 B.R.

404, 407–08 (Bankr. W.D. Mo. 1996) (finding that, where a stated intent is

to surrender property, a creditor is not required to seek a trustee's

intervention to enforce the debtor's compliance); *In re Chavarria*, 117 B.R.

582, 585 (Bankr. D. Idaho 1990) (finding that, while a trustee may enforce a

statement of intention, a court may order performance of a stated intention

upon the request of a secured creditor without requiring the trustee as an

intermediary), *overruled, in part, on other grounds, McClellan Fed. Credit*

*Union v. Parker* (*In re Parker*), 139 F.3d 668, 672–73 (9th Cir. 1998); *but see*

*Credithrift of America, Inc. v. Williams* (*In re Williams*), 64 B.R. 737, 738

---

[17]  If an asset that is security for a debt is personal property, the Code
provides an additional incentive to a debtor to comply with § 521(a)(2)'s
timelines.  *See Samson v. W. Capital Partners, LLC.* (*In re Blixseth*), __ B.R. __ (9th
Cir. BAP May 25, 2011).  Section 362(h) provides that the automatic stay is
terminated and the personal property is no longer part of the bankruptcy estate
when it secures a debt and is not included within a statement of intention, or if
the statement of intention is not complied with, before the § 521(a)(2) timelines
expire.  The remedy does not apply here because the Property is real property,
not personal property.

MEMORANDUM OF DECISION - 39

(Bankr. S.D. Ohio 1986) (holding a creditor must first seek the trustee's

involvement before petitioning the court to compel a debtor's

performance).

Nichole's Statement of Intention indicated she would surrender her

interest in the Property to Midland.  She did not do so.  Neither Midland

nor ISUFCU, the secured creditors as to the Property, ever requested that

Trustee act to ensure that Nichole perform her stated intention.  Instead,

the secured creditors apparently elected to proceed to foreclose, and, with

Trustee's cooperation, both sought relief from the automatic stay as to

Nichole's interest in the Property.  It was not until this adversary

proceeding to avoid Nichole and David's transfers was commenced that

ISUFCU raised any concern over Nichole's failure to comply with her

stated intention.

When the § 521(a)(2)(B) deadlines expired, ISUFCU and Midland

were free to either request Trustee to petition the Court, or to ask the Court

themselves, to compel Nichole to surrender her interest in the Property to

Midland.  Neither did so.  This is not surprising given that this course of

MEMORANDUM OF DECISION - 40

action would not have assisted in David's (and ISUFCU's) efforts to avoid a Midland foreclosure, and to protect their interests in the Property via the refinance. The point is that Trustee did not forfeit Nichole's bankruptcy estate's interest in the Property by not, *sua sponte*, verifying whether the surrender had occurred and petitioning the Court to compel Nichole to perform.

Summary judgment is not appropriate under David and ISUFCU's forfeiture theory.

### Conclusion

David and ISUFCU's motion for summary judgment will be denied. The undisputed facts show that Nichole's one-half tenant-in-common interest in the Property became property of her bankruptcy estate as a matter of law on the date David's bankruptcy estate was closed. At no time has Trustee acted inconsistently regarding his duties in these cases, and the Court declines to equitably estop him from pursuing avoidance of Nichole's and David's transfers, if appropriate, under § 549(a). Finally, by not acting to ensure that Nichole performed her stated intention to

MEMORANDUM OF DECISION - 41

surrender the Property to Midland, something that neither David nor

ISUFCU apparently wanted to occur, Trustee did not somehow forfeit

Nichole's bankruptcy estate's interest in the Property.

A separate order will enter.  This action will proceed to trial.


Dated:  June 21, 2011

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge


MEMORANDUM OF DECISION - 42